UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **SPEED WAY TRANSPORTATION, LLC,** *et al.*, | : | |
| Plaintiffs, | : | Case No. 2:20-cv-5047<br>Judge Sarah D. Morrison<br>Magistrate Judge Kimberly A. Jolson |
| v. | | |
| **CITY OF GAHANNA,** *et al.*, | : | |
| Defendants. | | |

## OPINION AND ORDER

Plaintiffs Speed Way Transportation, LLC and Ahmed Shehata filed their Complaint against Defendants City of Gahanna, Keith Winn in his individual and official capacities, the Gahanna Division of Police, and Jeff Spence in his individual and official capacities. Plaintiffs' Complaint asserts several claims stemming from their belief that they were denied a fair opportunity to participate in and benefit from Gahanna's competitive bidding process for towing services, including a claim for deprivation of the right to contract under 42 U.S.C. § 1981, and claims for constitutional violations based on the First, Fourth, Fifth, and Fourteenth Amendments and brought under 42 U.S.C. § 1983.[1] (Compl., ECF No. 1.) This matter is before the Court for consideration of Defendants' Motion to Dismiss. (Mot. to Dismiss, ECF No. 10.) Plaintiffs responded (Resp., ECF No. 17) and Defendants

---

[1] The Complaint also includes a claim for tortious interference with a business interest under Ohio law. Plaintiffs have since abandoned that claim. (Resp., 1.)

filed their reply (Reply, ECF No. 18). This matter is now ripe for consideration. For the reasons set forth below, Defendants' Motion is **GRANTED**.

I.  BACKGROUND

All well-pled factual allegations in the Complaint (Compl., ECF No. 1) are considered as true for purposes of the Motion to Dismiss. *See Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016). The following summary draws from the allegations in the Complaint, the documents integral to and incorporated therein, and certain other documents which are subject to judicial notice.

A.  Parties

Plaintiff Ahmed Shehata owns and operates Plaintiff Speed Way Transportation, LLC, d/b/a Speed Way Towing, a vehicle towing company located in Gahanna, Ohio. (Compl., ¶¶ 4–5.) Mr. Shehata is a citizen and resident of the United States, of Egyptian origin. (*Id.*, ¶ 5.) He is also a Muslim. (*Id.*) Plaintiffs believe that "Speed Way Towing is the only business in Gahanna that is owned and operated by individuals of Egyptian national origin and Islam religion." (*Id.*, ¶ 24.)

Defendant City of Gahanna is a municipality just outside of Columbus, Ohio. (*Id.*, ¶ 6.) Defendant Keith Winn is Gahanna's Public Safety Director. (*Id.*, ¶ 7.) In that role, Director Winn is responsible law enforcement and oversees Gahanna's Chief of Police. (*Id.*) Defendant Jeff Spence is Gahanna's Chief of Police. (*Id.*, ¶ 8.) Chief Spence is responsible for overseeing and supervising Defendant Gahanna Division of Police, including its requests for proposals. (*Id.*)

### B. 2017 Towing Contract

In July 2017, Plaintiffs submitted a bid for a three-year towing contract with Gahanna (the "2017 Towing Contract"). (*Id.*, ¶ 10.) In the months leading up to the submission, Plaintiffs had been working to correct alleged deficiencies on their property required to obtain a permit from Gahanna to operate a towing business. (*Id.*) Plaintiffs alleged that they were "falsely told that the City was considering awarding three contracts, and assured Plaintiffs they would more than likely qualify if they rectified their deficiencies." (*Id.*, ¶ 11.) Plaintiffs were not awarded the 2017 Towing Contract. (*Id.*, ¶ 12.) On August 14, 2017, Gahanna emailed Plaintiffs a letter, advising that their bid was not accepted because "(1) Plaintiff[s'] storage area was lacking a hard surface with proper drainage and the fact that some vehicles were parked on the grass; (2) the existence of a wood fence instead of chain link; and (3) unspecified ordinance violations with the storage area." (*Id.*)

That day, the then-Director of Public Safety "alerted various officials that he had e-mailed Plaintiffs [the] letter[.]" (*Id.*, ¶ 14.) In Plaintiffs' words, "[l]ess than ten minutes later, without stating any basis, the Director of Public Service in the Department of Public Service and Engineering, issued a notice stating the Plaintiff Shehata might find the e-mail 'extremely upsetting' and advising employees to '[t]ake precaution if he enters the building by calling the police department immediately.'" (*Id.*)

On December 13, 2018, Plaintiffs filed suit against Gahanna in the Franklin County Court of Common Pleas, asserting claims for declaratory judgment, promissory estoppel, and recovery of costs (the "2018 State Court Action"). (*Id.*,

3

¶ 13.) *See Speed Way Transp., LLC v. City of Gahanna*, No. 18-CV-10373 (Franklin Cty. Ct. Com. Pl.). Plaintiffs assert that the 2018 State Court Action was "a direct and proximate result" of having been denied the 2017 Towing Contract. (*Id.*) The Court granted Gahanna's motion for judgment on the pleadings, and the case was terminated from the docket of the Court of Common Pleas on March 25, 2020. *See Speed Way Transp., LLC*, No. 18-CV-10373 (Franklin Cty. Ct. Com. Pl.) (Mar. 25, 2020 docket entry). The next month, Plaintiffs filed an appeal. *See id.* (Apr. 23, 2020 docket entry). *See also Speed Way Transp. LLC v. City of Gahanna*, No. 20-AP-239 (10th Dist. Ct. App.).

    C.    **2020 Towing Contract**

In "late May or early June 2020," Defendants issued the Gahanna Division of Police Contract Specifications and Request for Proposals (the "RFP") seeking bids for a new three-year towing contract (the "2020 Towing Contract"). (Compl., ¶ 15. *See also* RFP, ECF No. 1-1.) The RFP states:

> It is the intention of the City of Gahanna ("City") to contract with a successful bidder(s) ("bidder" or "Towing Agency") for the period beginning July 1, 2020 and ending June 30, 2023, for the removal of vehicles that are wrecked, junked, or otherwise must be removed at the direction of the Gahanna Division of Police.
>
> The City shall select TWO (2) bidders/towing agencies from the respondents that are capable of meeting the contract specifications.
>
> **Bids will be accepted for fourteen (14) days commencing on Friday, June 5th at 12p.m. All bids must be received electronically by the City no later than 12p.m. on Friday, June 19th. Bids for consideration shall be submitted by email to Amy Moneypenny at: amy.moneypenny@gahanna.gov.**
>
> It is the further intention of the City of Gahanna that the successful bidder shall have the obligation to remove all cars designated as junked,

4

> damaged, abandoned, stolen, or illegally parked, and the removal of cars pursuant to an arrest, when notified by proper officials of the City of Gahanna, without cost to the city, other than herein provided for.

(RFP, 1.) The RFP sets out several "specifications" "required by the bidder to comply with the towing contract." (*Id.*) The specifications include information that must be included in any bid—such as pricing and fees—and statements mandating the bidder's ability to comply with certain administrative and regulatory requirements—such as records retention, insurance coverage, customer payment methods, fleet size, and storage capacity. (*Id.*, 1–8.)

Plaintiffs submitted a timely bid for the 2020 Towing Contract. (Compl., ¶ 18. *See also* Speed Way Bid, ECF No. 1-2.) Plaintiffs allege that they "received very little cooperation from the Defendants" in the bidding process. (*Id.*, ¶ 16.) For example:

- Plaintiffs sent two emails to Chief Spence and his Deputy, which went unanswered. (*Id.*)

- Despite promises, Plaintiffs were not alerted when the RFP was posted, and that the RFP was not posted in a conspicuous location. (*Id.*, ¶ 17.)

- Plaintiffs' representative was hung up on when attempting to deliver the bid fee. (*Id.*, ¶ 19.)

- Plaintiffs were required to communicate through the City Attorney's office. (*Id.*)

According to Plaintiffs, "[o]ther bidders were not treated in this fashion." (*Id.*)

The Speed Way Bid quoted the following prices:

| | |
|---|---|
| Straight hook-up fee: | $140 |
| Flat-bed fee: | $140 |
| Dolly tow fee: | $140 |
| Tractor trailer/semi-truck tow fee: | $239 |
| Additional storage fee: | $15 / day |

5

(*Id.*, ¶ 20. *See also* Speed Way Bid.) The Speed Way Bid also disclosed that Plaintiffs planned to subcontract heavy-duty tows. (*Id.*)

Again, Plaintiffs were unsuccessful. (*Id.*, ¶ 22.) They were informed in July 2020, that they were not awarded the 2020 Towing Contract because "there was inadequate improved surfacing, inadequate spacing, and inadequate chain link fencing at the site." (*Id.*) Defendants also noted "that Speed Way would have to subcontract the large vehicle tow jobs to third parties whereas the other contract bidders were able to handle the job themselves." (*Id.*) Plaintiffs protested, complaining that Gahanna "had not conducted an on-site inspection." (*Id.*) Gahanna responded that "an on-site inspection was not required" and that they had "viewed the property from the right-of-way." (*Id.*)

Plaintiffs allege that these reasons "are pretext for discrimination" and "are not true." (*Id.*, ¶ 23.) According to Plaintiffs, "appropriate surface was added following denial of the" 2017 Towing Contract, "adequate spacing was . . . available," and the property's "chain link fence was built according to specifications from" Gahanna. (*Id.*) Plaintiffs further allege that "Defendants previously informed [them] that is was acceptable to have a subcontract with a third party for heavy truck/trailer tow jobs." (*Id.*)

### D. Other Conduct

Plaintiffs also allege that Defendants have burdened their business operations by "continu[ing] to send water bills to Plaintiff Speed Way Towing despite the fact that Plaintiff has never had water service or even access to water on

6

the property," and by sending a letter "stating that there was a lien on the property for unpaid storm water bills dating from 2007 . . . despite the fact that Speed Way Towing did not own the property prior to 2018, and the existence of the supposed lien did not appear on the title search prior to the sale." (*Id.*, ¶ 26–27.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal alteration and quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Directv, Inc. v. Treesh*, 487 F.3d, 471, 476 (6th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## III. ANALYSIS

Plaintiffs' remaining claims center on their allegation that Defendants unlawfully discriminated against them, either on the basis of Mr. Shehata's national origin or religion, or in retaliation for engaging in constitutionally-protected activity. In large part because Plaintiffs' Complaint fails to adequately allege that Defendants acted with any discriminatory or retaliatory intent, the Complaint fails to state a claim upon which relief may be granted.

### A. The Complaint fails to plausibly allege that Defendants acted with discriminatory intent.

Defendants argue that the Complaint fails to allege sufficient facts to support a reasonable inference that Defendants intentionally discriminated against Plaintiffs. Because such intent is an element common to several of Plaintiffs' claims, the Court will address this argument first.

Defendants cite several cases standing for the proposition that "conclusory allegations of discriminatory intent without additional supporting details do[ ] not sufficiently show that the pleader is entitled to relief." *Nali v. Ekman*, 355 F. App'x 909, 913 (6th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). *Cf. Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 683–84 (6th Cir. 2011) (reversing the lower court's denial of a motion to dismiss equal protection claim where, "among the 250 paragraphs of the amended complaint, there is no single allegation of action taken by any of the defendants that hints at gender-based discriminatory animus"). In

8

particular, Defendants argue that the Complaint fails to plausibly allege that Defendants' conduct toward Plaintiffs was influenced by Mr. Shehata's religion or national origin, let alone animus towards them. In their response, Plaintiffs rest on their Complaint, arguing that it indeed contains sufficient factual allegations. Although they dissect and attempt to distinguish the case law offered by Defendants, Plaintiffs offer none in support of their own position.

The defining characteristic of discrimination is differential treatment. *See Discrimination*, BLACK'S LAW DICTIONARY (11th ed. 2019). *See also Discriminate*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/discriminate (last visited June 10, 2021). *Cf. Ryan v. City of Detroit*, 174 F. Supp. 3d 964, 976 (E.D. Mich. 2016) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)) ("The hallmark of the Equal Protection Clause is that 'all persons similarly situated should be treated alike.'"), *aff'd sub nom. Ryan v. City of Detroit, MI*, 698 F. App'x 272 (6th Cir. 2017). Very simply stated, discrimination risks becoming unlawful when the basis for differential treatment is a protected characteristic, including religion and national origin. Accordingly, courts analyzing claims of unlawful discrimination regularly look for a difference in how the defendant treated the plaintiff, and how the defendant treated a person similarly situated to the plaintiff but not sharing the protected characteristic. *See, e.g., Nali v. Ekman*, 355 F. App'x 909, 913 (6th Cir. 2009) (affirming dismissal of plaintiff's First Amendment retaliation claim where the complaint did not allege that similarly situated people not belonging to his

9

protected class were treated differently by defendants); *Getachew v. Central Ohio Workforce Inv. Corp.*, No. 2:11-cv-169, 2012 WL 1575728, at *6 (S.D. Ohio May 3, 2012) (Sargus, J.) (granting dismissal of plaintiff's § 1981 claim because "there is no allegation that [defendant] treated the plaintiff any differently than it treated any non-minority"); *Rondigo*, 641 F.3d at 684 (evaluating the sufficiency of plaintiffs' complaint asserting a sex-discrimination claim under the equal protection clause vis-à-vis allegations that female plaintiff was treated less favorably than allegedly-similarly situated male).

Plaintiffs allege that (i) their bid for the 2020 Towing Contract was denied, (ii) they were subjected to "hurdles" in the bidding process, including difficulty finding the RFP, receiving little assistance from Defendants, and being requiring to communicate through the City Attorney, (iii) they received bills from Gahanna for utility services that were not provided, and (iv) their property has been subjected to an allegedly improper lien. Their Complaint reflects Plaintiffs' belief that this conduct was motivated by discrimination based on Mr. Shehata's religion and national origin.

Despite Plaintiffs' insistence otherwise, the Complaint does not include sufficient facts to support the reasonable inference that the alleged mistreatment is the result of discrimination. Plaintiffs purport to identify two comparators: The firms who were awarded the Towing Contract. Beyond the fact of their success and the substance of their bids (*see* ECF Nos. 1-3, 1-4), the Complaint is devoid of factual allegations about these firms or Defendants' treatment of them. The

Complaint does not allege the religion or national origin of their owners. Nor does it allege that Defendants provided them with assistance or cooperation throughout the bidding process. The Complaint is similarly devoid of facts that might indicate discriminatory animus or ill-will on the part of any Defendant. (This applies doubly for Director Winn, who is entirely absent from the Facts section of the Complaint, and Chief Spence, who is alleged only to have failed to respond to an email from Plaintiffs.)

Plaintiffs argue that the indication lies in the fact that their bid contained lower prices for certain services than the two successful bids. Even drawing all reasonable inferences in favor of the plaintiff, the lower bid prices alone are insufficient. Though it is true that Plaintiffs' bid quoted lower fees for several services, a comparison also reveals several differences that favor the comparators— including in processing fees, storage capacity, fleet size, and ability to handle heavy-duty tows. It is relevant that the City's cited reasons for not awarding Plaintiffs the 2020 Towing Contract encompass several of these differences.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'— 'that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). *See also Rondigo*, 641 F.3d at 684. Plaintiffs' allegations of intentional discrimination fail to breach the boundary between possible and plausible.

### B. The Complaint fails to state a cognizable claim for deprivation of freedom to contract.

Count One of Plaintiffs' Complaint asserts a claim for "Violations of the Right of Freedom to Contract Secured by 42 U.S.C. § 1981." (Compl., 8.)

> Congress passed the Civil Rights Act of 1866 in the aftermath of the Civil War to vindicate the rights of former slaves. Section 1 of that statute included the language found codified today in § 1981(a), promising that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts, to sue, be parties, [and] give evidence . . . as is enjoyed by white citizens."

*Comcast Corp. v. Nat'l Assoc. of African American-Owned Media*, 140 S.Ct. 1009, 1015 (2020) (quoting 42 U.S.C. § 1981; Civil Rights Act of 1866, 14 Stat. 27). "[T]he legislation was designed to eradicate blatant deprivations of civil rights" on the basis of race. *Gen. Bldg. Contractors Ass'n, Inv. v. Pennsylvania*, 458 U.S. 375, 388 (1982). To succeed on a § 1981 claim, "a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast*, 140 S.Ct. at 1019.

Defendants first argue that Plaintiffs' § 1981 claim is preempted by § 1983. The Court agrees. Sixth Circuit precedent is clear:

> "[T]he express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981" when the claim is asserted against a state actor in his official capacity.

*Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (alteration in original) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989)). *See also Arendale v. City of Memphis*, 519 F.3d 587, 598–99 (6th Cir. 2008) (concluding same after thorough analysis of statutes, legislative history, Supreme Court precedent, and statutory

12

amendments). The same is true with respect to "§ 1981 claim[s] against an individual state actor sued in his or her individual capacity." *McCormick v. Miami Univ.*, 693 F.3d 654, 660 (6th Cir. 2012). Defendants are state actors. Plaintiffs' recourse for alleged discrimination committed by them is through § 1983.

In their response, Plaintiffs argue for construction of their § 1981 claim under § 1983. *See Bolden v. City of Topeka*, 441 F.3d 1129, 1137 (10th Cir. 2006). Even still, the claim cannot proceed. Of principal importance here, the Supreme Court has held that "§ 1981 . . . can be violated only by purposeful discrimination." *Gen. Bldg. Contractors Ass'n, Inc.*, 458 U.S. at 390. *See also Amini v. Oberlin College*, 440 F.3d 350, 358 (6th Cir. 2006) (explaining that, to plead a § 1981 claim, a plaintiff must plead that "the defendant intended to discriminate against him on the basis of race"). The Court has already concluded that the Complaint does not allege facts supporting an inference that Defendants purposefully discriminated against Plaintiffs.

Defendants' motion to dismiss Plaintiffs' § 1981 claim is **GRANTED**.

### C. The Complaint fails to allege facts sufficient to support a plausible claim for discrimination or retaliation based on Mr. Shehata's religion.

Count Two of the Complaint asserts a claim for "Violations of Rights Secured by the Free Exercise Clause of the First Amendment to the United States Constitution." (Compl., 8.) Specifically, Plaintiffs assert that Defendants rejected their bid "on account of [Mr. Shehata's] religion" and that the treatment they received constituted "retaliation for the exercise" of his religion. (*Id.*, ¶¶ 34–35.)

13

As to the first assertion, the Complaint contains no factual allegations supporting Plaintiffs' contention that Mr. Shehata's religion played a role—*any* role—in the decision to reject Plaintiffs' bid for the 2020 Towing Contract.

As to the second, it is well-established that "retaliation by public officials against the exercise of First Amendment rights is itself a violation of the First Amendment." *Zilich v. Longo*, 34 F.3d 359, 364 (6th Cir. 1994) (quoting *Fraternal Order of Police Hobart Lodge #121, Inc. v. Hobart*, 864 F.2d 551, 553 (7th Cir. 1988)) (alteration omitted). A First Amendment retaliation claim has three elements: (i) that the plaintiff engaged in protected conduct, (ii) that the defendant took adverse action against the plaintiff that would deter a person or ordinary firmness from continuing to engage in that conduct, and (iii) the adverse action was taken at least in part because of the exercise of the protected conduct. *Holzemer v. City of Memphis*, 621 F.3d 514, 520 (6th Cir. 2010) (citation omitted). The Court need not expend resources on the first two elements, because a decision has already been reached on the third. The Complaint does not allege facts sufficient to support an inference that Defendants' alleged mistreatment of Plaintiffs was taken "because of" Mr. Shehata's exercise of his religion.

Defendants' motion to dismiss Plaintiffs' freedom of exercise claim is **GRANTED**.

> D. **The Complaint fails to allege facts sufficient to support a plausible claim for retaliation based on Plaintiffs' prior lawsuit against the City.**

In a similar vein, Count Three of the Complaint asserts a claim for "Violations of Rights Secured by the Right to Petition the Government for Redress

14

of Grievances Clause of the First Amendment of the United States Constitution." (Compl., 9.) Here, Plaintiffs allege that Defendants' conduct constituted retaliation for the 2018 State Court Action. (*Id.*, ¶¶ 37–38.)

The same three elements—protected conduct, adverse action, and causation—again apply. *Holzemer*, 621 F.3d at 520. Defendants argue that Plaintiffs have not alleged facts sufficient to support a reasonable inference that their actions were motivated by Plaintiffs' protected petitioning activities. In their response, Plaintiffs simply assert that their Complaining "clearly alleged facts" supporting their claim.[2] It did not.

Courts have certainly recognized that direct evidence of retaliatory intent is not often forthcoming—nor does it have to be. *Holzemer*, 621 F.3d at 525–26. But a complaint must contain facts sufficient to make out a plausible claim of misconduct. Plaintiffs' Complaint falls short of this mark. The Court notes that Plaintiffs were requested to communicate through the City Attorney's office. However, because the 2018 State Court Action was active at that time, the request is not reasonably characterized as adverse. Otherwise, the Court cannot discern from the factual

---

[2] Plaintiffs' response also sets forth argument based on facts not alleged in the Complaint. (*See* Resp., 12.) The Court cannot consider them. *Kostrzewa v. City of Troy*, 247 F.3d 633, 643 (6th Cir. 2001) ("The district court, in reviewing a motion to dismiss, may not consider matters beyond the complaint.") (citation omitted). Nor will it permit Plaintiffs to amend the pleadings through their Response. *See Guy v. Bd. of Educ. Rock Hill Local Sch. Dist.*, No. 1:18-cv-893, 2021 WL 1140224, at *3 (S.D. Ohio Mar. 25, 2021) (Bowman, J.) ("Plaintiff may not amend her complaint by submitting additional allegations in response to a 12(b)(6) motion to dismiss.") (citing *Roulhac v. Sw. Reg'l Transit Auth.*, No. 1:07-cv-408, 2008 WL 920354, at *4 (S.D. Ohio Mar. 31, 2008) (Dlott, J.)). Accordingly, the Court's review is strictly limited to the factual allegations set forth in the Complaint.

15

allegations any adverse action taken by Defendants that was motivated by the 2018 State Court Action.

Defendants' motion to dismiss Plaintiffs' petitioning retaliation claim is **GRANTED**.

### E. The Complaint fails to allege facts sufficient to support a plausible claim for violation of Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment.

Count Four asserts a claim for "Violations of Rights Secured by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution." (Compl., 9.) Therein, Plaintiffs allege that they were denied the Towing Contract "on account of their national origin and religion, even though they submitted the lowest and best bid." (*Id.*, ¶ 42.)

"The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Rondigo*, 641 F.3d at 681–82 (citation omitted). "The Equal Protection Clause prohibits only intentional discrimination." *Ryan*, 174 F. Supp. 3d at 971 (citing *Washington v. Davis*, 426 U.S. 229, 239 (1976)). As discussed in detail, Plaintiffs' Complaint fails to allege facts sufficient to support the inference that Defendants intentionally discriminated against Plaintiffs.

Defendants' motion to dismiss Plaintiffs' equal protection claim is **GRANTED**.

### F. The Complaint fails to allege facts sufficient to support a plausible claim for violation of Plaintiffs' due process rights.

Count Five of the Complaint asserts a claim for "Violations of Procedural and Substantive Due Process Rights Secured by the Due Process Clause of the Fifth and Fourteenth Amendment[s] to the United States Constitution." (Compl., 10.) As the quoted language suggests, there are several theories upon which a plaintiff may base a due process claim. Plaintiffs' Complaint succeeds on none.

#### 1. Plaintiffs' claims are not viable under the Fifth Amendment.

The Fifth Amendment forbids the United States from depriving any person of life, liberty, or property without first affording due process. U.S. Const. amend. V. "[I]t is well-established that the Fifth Amendment applies only to the United States government and its officials." *Doe v. Wright State Univ.*, No. 3:16-CV-469, 2017 WL 3671240, at *4 (S.D. Ohio Aug. 24, 2017) (Rice, J.) (citing *Dusenberry v. United States*, 534 U.S. 161, 167 (2002)). Not one of Defendants is a component or official of the United States government. Accordingly, Plaintiffs' Complaint fails to state a claim under the Fifth Amendment.

#### 2. Plaintiffs fail to state a Fourteenth Amendment procedural due process claim.

The Fourteenth Amendment forbids a state from depriving any person of life, liberty, or property without first affording due process. U.S. CONST. amend. XIV § 1. "The fundamental aspects of procedural due process are notice and an opportunity to be heard." *Huntsman v. Perry Local Sch. Bd. of Educ.*, 379 F. App'x 456, 462–63 (6th Cir. 2010). "To establish a procedural due process violation, [a p]laintiff must

17

demonstrate that 1) it possessed a constitutionally protected property or liberty interest; 2) it was deprived of that interest; and 3) the state did not afford it adequate procedural rights prior to depriving it of that interest." *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F. App'x 826, 830 (6th Cir. 2009).

Defendants argue that Plaintiffs lack a property interest sufficient to maintain a procedural due process claim. Plaintiffs do not respond to Defendants' argument. Nonetheless, the Court agrees with Defendants. The Sixth Circuit has held, and the Ohio Supreme Court has agreed, that that an unsuccessful bidder for a public contract has no property interest in that contract unless (i) the bidder was actually awarded the contract and later deprived of it, or (ii) the governmental entity abused a limited grant of discretion in awarding the contract. *Cleveland Constr., Inc. v. Cincinnati*, 888 N.E.2d 1068, 1070 (Ohio 2008) (citing *United of Omaha Life Ins. Co v. Solomon*, 960 F.2d 31, 34 (6th Cir. 1992)). The Complaint does not establish that Plaintiffs had a constitutionally-protected interest in the 2020 Towing Contract. It does not allege that the 2020 Towing Contract was promised to Plaintiffs, or that Gahanna was subject to limited discretion in awarding it. To the contrary, the RFP states:

> The City of Gahanna shall have the sole responsibility of making the final judgment as to acceptability of the equipment and the facilities preferred by the bidder and shall have full option to reject all bids.

(RFP, 7.)

Without establishing a protected interest, the Complaint fails to state a procedural due process claim under the Fourteenth Amendment.

### 3. Plaintiffs fail to state a Fourteenth Amendment substantive due process claim.

The third theory upon which Plaintiffs could sustain a due process claim is the Fourteenth Amendment's substantive due process protections. There are two types of substantive due process claims: those asserting denial of a constitutional or statutory right, and those encompassing official acts that are never permissible, regardless of the procedural safeguards that accompany them. *Mertik v. Blalock*, 983 F.2d 1353, 1367 (6th Cir. 1993). The former is not at issue here. The latter requires government action that "shocks the conscience." *Id.* at 1367–68 (internal quotation marks omitted). "[C]onduct that 'shocks the conscience' is 'conduct that is so brutal and offensive that it does not comport with traditional ideas of fair play and decency.'" *Puckett v. Lexington-Fayette Urban Cty. Gov't*, 566 F. App'x 462, 472 (6th Cir. 2014) (some internal quotation marks omitted) (quoting *Handy-Clay v. City of Memphis*, 695 F.3d 531, 547–48 (6th Cir. 2012)). The Sixth Circuit has raised doubts as to whether conduct "outside the realm of physical abuse" can ever constitute conduct that shocks the conscience. *See Braley v. City of Pontiac*, 906 F.2d 220, 226 (6th Cir. 1990). Accordingly, Plaintiffs' allegations of economic injury and bureaucratic inconvenience fall far short.

Plaintiffs disagree, and point to the paragraph of their Complaint that states, "Defendants' conduct alleged herein was an arbitrary abuse of executive power so egregious that it shocks the conscience of the public." (Compl., ¶ 48.) This "allegation" is a legal conclusion, entitled to neither judicial acceptance nor

19

deference. *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The Court rejects Plaintiffs' characterization.

Defendants' motion to dismiss Plaintiffs' due process claim is **GRANTED**.

## IV. CONCLUSION

Defendants' Motion to Dismiss is **GRANTED**. This action is **DISMISSED**. The Clerk is **DIRECTED** to remove this case from the docket of the United States District Court for the Southern District of Ohio.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**