# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Deborah S. Hunt
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  March 01, 2023

Mr. Jeremy Michael Grayem
Ice Miller
250 West Street, Suite 700
Columbus, OH 43215

Mr. Michael S. Kolman
Newhouse, Prophater, Kolman & Hogan
3366 Riverside Drive, Suite 103
Columbus, OH 43221

Mr. Frank J. Reed Jr.
Frost Brown Todd
10 W. Broad Street, Suite 2300
Columbus, OH 43215

> Re:  Case No. 21-3657, *Speed Way Transp., LLC, et al v. City of Gahanna, et al*
> Originating Case No. : 2:20-cv-05047

Dear Counsel,

The Court issued the enclosed opinion today in this case.

Enclosed are the court's unpublished opinion and judgment, entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Sincerely yours,

s/Cathryn Lovely
Opinions Deputy

cc:  Mr. Richard W. Nagel

Enclosures

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name:  23a0108n.06

No. 21-3657

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| SPEED WAY TRANSPORTATION, LLC, dba Speed Way Towing, AHMED SHEHATA, | ) ) ) |
| Plaintiff-Appellants, | ) ) |
| v. | ) ) ) |
| CITY OF GAHANNA, OHIO; KEITH WINN, in his individual and official capacity as Public Safety Director; GAHANNA DIVISION OF POLICE; JEFF SPENCE, in his individual and official capacity as Chief of Police, | ) ) ) ) ) ) |
| Defendants-Appellees. | ) ) |

**FILED**

Mar 01, 2023

DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

OPINION

Before:  SUHRHEINRICH, WHITE, and STRANCH, Circuit Judges.

The court delivered a PER CURIAM opinion.  SURHEINRICH, J. (pp. 17–20), delivered a separate opinion concurring in part and dissenting in part.

**PER CURIAM**.  Plaintiffs Speed Way Transportation LLC, doing business as Speed Way Towing, and Ahmed Shehata brought this suit under 42 U.S.C. §§ 1981 and 1983 after Defendant City of Gahanna denied their 2020 towing contract bid, which they claim is "because of" Shehata's national origin and religion.  The district court held that the complaint lacked factual allegations of intentional discrimination or unfair treatment to support their claims and dismissed the complaint.  We affirm in part and reverse in part.

**I.**

We treat the facts in the complaint as true.  *See Bright v. Gallia Cnty.*, 753 F.3d 639, 652 (6th Cir. 2014).  Shehata owns and operates Speed Way Towing.  He is a United States citizen of

No. 21-3657, *Speed Way Transp., LLC, et al. v. City of Gahanna, et al.*

Egyptian national origin and is a Muslim.  R.1, PID 2 (¶ 5).  Speed Way Towing is the only business in Gahanna that is owned and operated by individuals of Egyptian national origin and Islam religion.  *Id.* at PID 47 (¶ 24).

In 2017, Speed Way submitted a bid for a three-year towing contract with Defendant City of Gahanna.  *Id.* at PID 3 (¶ 10).  Prior to the submission, Plaintiffs had been working with the City to correct "alleged deficiencies and alleged 'violations'" on their property.  *Id.*  But Defendants "frustrated [their] efforts" to obtain towing permits by "chang[ing] specifications for compliance after Plaintiffs had completed work pursuant to [Defendants'] earlier instructions."  *Id.*

Plaintiffs were not awarded the 2017 contract.  *Id.* at PID 4 (¶ 12).  The City offered reasons why it rejected their bid in an email: "(1) Plaintiff's storage area was lacking a hard surface with proper drainage and the fact that some vehicles were parked on the grass; (2) the existence of a wood fence instead of chain link; and (3) unspecified ordinance violations with the storage area."  *Id.*  The City's then-Director of Public Safety, Keith Winn, simultaneously alerted other City officials that he emailed the denial letter to Plaintiffs.  *Id.* at PID 3–4 (¶¶ 7, 14).  Winn then sent an email warning that "Plaintiff Shehata might find the e-mail 'extremely upsetting'" and advising employees to contact the police department if he entered the building.  *Id.* at PID 4 (¶ 14).

This rejection prompted Plaintiffs to sue the City in state court in 2018.  *Id.* at PID 4 (¶ 13).  The state court dismissed that action on the City's motion for judgment on the pleadings.  *See Speed Way Transp., LLC v. City of Gahanna*, No. 18-CV-10373 (Franklin Cnty. Com. Pl.) (Mar. 25, 2020).

In May or June of 2020, the City issued a request for proposals soliciting bids for two, three-year towing contracts.  *Id.* at PID 4–5 (¶ 15).  The solicitation stated that bids would be accepted between Friday, June 5 and Friday, June 19, 2020.  *Id.*  In June 2020, Plaintiffs sent two

No. 21-3657, *Speed Way Transp., LLC, et al. v. City of Gahanna, et al.*

emails relating to the towing contract to Defendant Jeff Spence, the Chief of Police, and Deputy Chief Jeff Lawless, but received no response. *Id.* at PID 5 (¶ 16). The City "assured" Plaintiffs' attorney that it "would inform them when the solicitation for bids was posted," but never did. *Id.* Instead, Plaintiffs "discovered the existence of" the solicitation "in an obscure location on the Defendant City's website." *Id.* at PID 5 (¶ 17).

Plaintiffs submitted their bid on June 19, 2020, prior to the submission deadline. *Id.* at PID 5 (¶ 18). On June 18, 2020, a representative of Speed Way Towing attempted to deliver a check to serve as the bond for the contract. *Id.* at PID 5 (¶ 19). A sign posted outside instructed visitors to "call so that the appropriate city employee could come outside to speak to the visitor." *Id.* When the Speed Way Towing representative called, he was placed on hold after identifying himself, and the line was disconnected after five minutes on hold. *Id.* at PID 5–6 (¶ 19). Upon calling back the representative was told that "the City Attorney directed that Plaintiffs' attorney must call the City Attorney and that all communications must occur in that fashion." *Id.* Yet, other bidders were not treated this way. *Id.*

The prices quoted in Plaintiffs' bids were less than those of "the other two selected bids." *Id.* at PID 6 (¶¶ 20, 21). For example, Plaintiffs' bids for the straight-hook-up fee, and trailer/semi-trucks and trailer tows were $140 and $239 respectively. *Id.* at PID 6 (¶ 20); R.1-2, PID 24. Cal's Towing and Broad & James Towing each charged $155 for straight-hook-up towing and $155 for a flatbed or dolly tow. R.1, PID 6 (¶ 21); R.1-3, PID 51; R.1-4, PID 68. Broad & James charged $350 per tractor-trailer/semi-truck and trailer tows, and Cal's Towing charged $400 for the same job. R.1-3, PID 51; R.1-4, PID 68.

Plaintiffs were not awarded the 2020 bid. R.1, PID 6 (¶ 22). The City offered several reasons, including "inadequate improved surfacing, inadequate spacing, and inadequate chain link

No. 21-3657, *Speed Way Transp., LLC, et al. v. City of Gahanna, et al.*

fencing at the site." *Id.* Defendants also noted that other contract bidders were able to handle large vehicle tow jobs, which Plaintiffs would have to subcontract to third parties. *Id.* Plaintiffs claim that the City's stated reasons "are not true" and that "Defendants failed to perform a proper inspection" of their facility. *Id.* at PID 7 (¶ 23).

In addition, the City continued to send water bills to Plaintiffs even though Plaintiffs have never had City water service, *id.* at PID 7 (¶ 26), and also sent a letter stating that there was a lien on the property for unpaid storm water bills dating from 2007 before Speed Way Towing owned the property, *id.* at PID 7 (¶ 27).

The complaint alleges that Defendants' conduct violated (1) the right to freedom of contract under 42 U.S.C. § 1981 (Count I), (2) the Free Exercise Clause of the First Amendment (Count II), (3) the Petition Clause of the First Amendment (Count III), (4) the Equal Protection Clause of the Fourteenth Amendment (Count IV), (5) procedural and substantive due process (Count V), and (6) amounted to tortious interference with prospective economic advantage (Count VI). The district court dismissed all of Plaintiffs' claims for failure to state a claim, "[i]n large part because Plaintiffs' Complaint fail[ed] to adequately allege that Defendants acted with any discriminatory or retaliatory intent." R.19, PID 156. Noting that "[t]he defining characteristic of discrimination is differential treatment," *id.* at PID 157, the district court held that "the Complaint is devoid of factual allegations about [the two comparator firms, Cal Towing and Broad & James Towing] or Defendants' treatment of them," *id.* at PID 158. "Beyond the fact of their success and the substance of their bids," *id.*, the district court concluded "[t]he Complaint does not allege the religion or national origin of their owners," *id.* at PID 158–59, or that "Defendants provided them with assistance or cooperation throughout the bidding process," *id.* at PID 159. Furthermore, the district

-4-

No. 21-3657, *Speed Way Transp., LLC, et al. v. City of Gahanna, et al.*

court reasoned that the complaint contained no facts to suggest discriminatory animus or ill-will by Defendants. *Id.*

The district court first rejected Plaintiffs' argument that discriminatory animus could be inferred from the fact that their bid contained lower prices for certain services than Cal Towing and Broad & James Towing. *Id.* The court reasoned that "the lower bid prices alone are insufficient" to establish discriminatory intent. *Id.* Furthermore, the comparators had several factors in their favor—lower processing fees, more storage capacity, larger fleet size, and the ability to handle heavy-duty tows. *Id.* And the City cited some of these differences in support of its rejection of Plaintiffs' bid. *Id.*

Second, the court ruled that Plaintiffs failed to state a cognizable claim for deprivation of freedom of contract because "it was preempted by § 1983" and, as noted, Plaintiffs failed to allege facts supporting an inference of purposeful discrimination. *Id.* at 160–61.

Third, the district court held that the complaint lacked facts to support a claim for violation of the Free Exercise Clause. *Id.* Plaintiffs' assertion that Defendants rejected their bid "on account of [Shehata's] religion" was unsupported by any factual allegations to show that Shehata's religion "played a role—*any* role—in the decision to reject" Plaintiffs' bid for the 2020 contract. *Id.* at 162. And Plaintiffs' allegation "that the treatment they received constituted 'retaliation for the exercise' of his religion," was flawed because there were no facts to show that Defendants' alleged behavior was "because of" Plaintiff's exercise of his faith, a prerequisite to a First Amendment retaliation claim. *Id.* at 161–62.

Plaintiffs' Petition Clause claim failed for the same reason; no allegations supported a reasonable inference that Defendants' actions were motivated by the 2018 lawsuit. *Id.* at 163. The court rejected Plaintiffs' suggestion that Defendants' request to communicate through the City

No. 21-3657, *Speed Way Transp., LLC, et al. v. City of Gahanna, et al.*

Attorney's office was somehow suspect, because the parties were still litigating the 2018 action when the 2020 bid was rejected.  *Id.* at 163–64.

Fifth, the court held that the Plaintiffs' Equal Protection claim was without factual support because the complaint failed to allege facts to support an inference of intentional discrimination. *Id.* at 164.

Finally, the court held that Plaintiffs' due process claims failed.  *Id.* at 165.  There was no viable Fifth Amendment claim because none of the Defendants were federal officials.  *Id.*  The complaint did not establish that Plaintiffs had a constitutionally protected interest in the 2020 towing contract sufficient to sustain a procedural due process claim because there were no allegations that the 2020 towing contract had been promised to Plaintiffs or that the City had only limited discretion to award it.  *Id.* at 166.  There was also no viable substantive due process claim because "Plaintiffs' allegations of economic injury and bureaucratic inconvenience f[ell] far short" of government action that "shocks the conscience." *Id.* at 167.

Plaintiffs timely appeal.

## II.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Claims have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "[D]etailed factual allegations" are not necessary, but the complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (quoting *Twombly*, 550 U.S. at 555).

No. 21-3657, *Speed Way Transp., LLC, et al. v. City of Gahanna, et al.*

## A.

Plaintiffs argue that in dismissing their equal protection claim, the district court "failed to take into account and analyze all of the allegations in the complaint in their totality" and that they "allege[d] numerous facts" regarding Defendants' discriminatory intent.  Appellant Br. at 13, 15. We agree.

"To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 299 (6th Cir. 2006)). "[I]n the context of a civil rights claim, . . . conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim."  *Harden-Bey v. Rutter*, 524 F.3d 789, 796 (6th Cir. 2008) (quoting *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996)). A plaintiff does not state an equal protection claim merely by alleging that the plaintiff is a member of a protected class, and the defendant is not.  *See Nali v. Ekman*, 355 F. App'x 909, 913 (6th Cir. 2009).  Similarly, an allegation that only the plaintiff was subjected to discriminatory treatment does not support an inference of discrimination absent further allegations that "the people *not* disciplined were similarly situated" and did not share the same protected characteristic as the plaintiff.  *See id.*; *see also Napolitano*, 648 F.3d at 379 (holding that plaintiff failed to state equal protection claim where complaint "fail[ed] to make a plausible allegation that similarly situated organizations and individuals, of a different political viewpoint, have not been subject to the same alleged treatment by Defendants").

No. 21-3657, *Speed Way Transp., LLC, et al. v. City of Gahanna, et al.*

Plaintiffs have met their burden of pleading an equal protection claim.  In holding to the contrary, the district court found that Plaintiffs failed to allege "sufficient facts to support the reasonable inference that the alleged mistreatment is the result of discrimination."  R.19, PID 158.  Specifically, it found that Plaintiffs failed to allege the religion or national origin of the owners of the two comparator firms.  *Id.* at PID 159.  But the complaint clearly states that, "[u]pon information and belief, Plaintiff Speed Way Towing is the only business in Gahanna that is owned and operated by individuals of Egyptian national origin and Islam religion."  R.1, PID 7 (¶ 24).  In other words, Plaintiffs allege that no other business—let alone any other towing business—in the City of Gahanna, including the comparator firms Broad & James and Cal's Towing, is owned, and operated by individuals of Egyptian national origin and Muslim faith.

Plaintiffs also sufficiently allege that they were treated differently than the two comparator firms.  On appeal, they point to the following allegations in their complaint.  First, Plaintiffs' bid for the 2017 towing contract was rejected despite their extensive efforts to remediate the problems previously identified by Defendants.  Appellant Br. at 15; *see also* R.1, PID 3–4 (¶¶ 10–12).  That denial led Defendant Winn to send a "discriminatory email" to his colleagues warning them to call the police if Shehata entered the building.  Appellant Br. at 15; *see also* R.1, PID 4 (¶ 14).  Second, Plaintiffs received little cooperation from Defendants in their bid for the 2020 contract; they allege that Defendants Spence and Lawless failed to respond to their email inquiries and the City neglected to inform them when the solicitation for bids was posted on the City website despite a promise to do so.  Appellant Br. at 15; *see also* R.1, PID 5 (¶¶ 16–17).  Third, unlike other bidders, Plaintiffs were instructed that they could only communicate with the City through their attorney.  Appellant Br. at 15–16; *see also* R.1, PID 5–6 (¶ 19).  Fourth, the City, citing deficiencies Plaintiffs had already remediated according to Defendants' instructions, denied Plaintiffs' bid for the 2020

No. 21-3657, *Speed Way Transp., LLC, et al. v. City of Gahanna, et al.*

towing contract on allegedly pretextual grounds.  Appellant Br. at 16; *see also* R.1, PID 6–7 (¶¶ 22–23).  Fifth, the City sent Plaintiffs bills for water service they did not have and informed them of a lien on their property for unpaid storm water bills dating back to a time when Plaintiffs did not own the property.  Appellant Br. at 16; *see also* R.1, PID 7 (¶¶ 26–27).

The district court found the complaint's failure to "allege that Defendants provided [the comparator firms] with assistance or cooperation throughout the bidding process" fatal.  R.19, PID 159.  Although it cited no authority for the proposition that Plaintiffs were required to do so in order to sufficiently allege differential treatment, we note that, as set forth above, Plaintiffs alleged other instances of discriminatory treatment apart from Defendants' failure to assist them in the 2020 bidding process.

Moreover, Plaintiffs adequately allege that they were similarly situated to the two comparator firms that ultimately received the bids.  The exhibits attached to the complaint show that Plaintiffs' quoted prices were comparable to—and in some cases, less than—the prices quoted by the comparators.  For example, Speed Way's straight hook up fee was $140, which was lower than the $155 quoted by both Broad & James and Cal's Towing.  R.1-2, PID 24; R.1-3, PID 51; R.1-4, PID 68.  Speed Way also quoted a price of $140 for the flat-bed and dolly tow fee, while Broad & James and Cal's Towing both quoted $155.  R.1-2, PID 24; R.1-3, PID 51; R.1-4, PID 68.  Additionally, both Speed Way and Broad & James quoted $40 for additional storage for large vehicles, while Cal's towing quoted $50.  R.1-2, PID 24; R.1-3, PID 51; R.1-4, PID 68.

On the other hand, Speed Way indicated in its bid that it would need to subcontract heavy-duty tows, while Broad & James and Cal Towing did not.  R.1-2, PID 24.  Among other specifications, Speed Way also indicated that it could accommodate fewer vehicles at its facility—300 compared to 1,500 at Broad & James—and that it only had five vehicles in its fleet compared

No. 21-3657, *Speed Way Transp., LLC, et al. v. City of Gahanna, et al.*

to Broad & James's thirty vehicles. R.1-2, PID 26, 31; R.1-3, PID 53, 54. Although these figures indicate some differences between Speed Way and the two comparator firms, we do not require perfect identity between the plaintiff and comparators for purposes of the similarly situated analysis. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998) (stating that this court "simply require[s] that the plaintiff demonstrate that he or she is similarly situated to the non-protected employee in all *relevant* respects"); *see also Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 412 (6th Cir. 2008) (faulting the district court for employing a similarly situated analysis that "is too narrow and necessitates an exact correlation not required by the law of this circuit").

On appeal, Defendants argue that Plaintiffs "have not pled any direct evidence that [Defendants] acted with a discriminatory intent based on Mr. Shehata's national origin or religion." Appellee Br. at 24–25. We note as an initial matter that at the pleadings stage, Plaintiffs are not required to produce evidence to support their claims. *See Bowers v. Ophthalmology Grp.*, 733 F.3d 647, 655 (6th Cir. 2013) ("[U]nlike a Rule 56 motion that relies on evidence, a Rule 12(b)(6) motion is based solely on the pleadings."). Moreover, as we have recognized, "[r]arely will there be direct evidence from the lips of the defendant proclaiming his or her . . . animus." *Robinson v. Runyon*, 149 F.3d 507, 513 (6th Cir. 1998). And at this stage of the litigation, we do not require detailed factual allegations regarding discriminatory conduct because, "[u]ntil discovery has begun, the plaintiff simply may not have access to all the facts." *El-Hallani v. Huntington Nat'l Bank*, 623 F. App'x 730, 735 (6th Cir. 2015); *see also Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 453 (6th Cir. 2022) ("Nor should Plaintiffs' lack of evidence terminate their suits at the motion-to-dismiss stage. At this point, the machinery of the U-visa and prewaitlist-

No. 21-3657, *Speed Way Transp., LLC, et al. v. City of Gahanna, et al.*

work-authorization adjudication processes is known only to USCIS.  Clearly, discovery is critical to understanding whether the U-visa process is a systematic line or not.").

Even so, Plaintiffs have alleged sufficient facts suggesting that Defendants acted with discriminatory intent.  This is not a case where Plaintiffs have only conclusorily alleged religious and national origin discrimination "without additional supporting details."  *Nali*, 355 F. App'x at 913.  For one thing, Plaintiffs allege that Defendant Winn, apparently without any previous interaction with Plaintiffs, sent an email to colleagues warning them to call the police if Shehata entered the building after Plaintiffs were denied the 2017 towing contract.  R.1, PID 4.  Although a frustrated bidder might indeed find the rejection of his or her bid "extremely upsetting," we are left to wonder why the expected reaction of Shehata—the only business owner in the Gahanna who is of Egyptian national origin and Muslim faith, R.1, PID 7 (¶ 24)—was considered to be so threatening that it prompted Defendant Winn to send such an email to his colleagues.

Then there are the City's stated reasons for denying Plaintiffs' bid for the 2020 towing contract.  In response to Plaintiffs' written inquiry, the City explained that it had denied Plaintiffs' bid due in part to "inadequate improved surfacing, inadequate spacing, and inadequate chain-link fencing at the site."  R.1-5, PID 74.  But Plaintiffs allege that they had already added the appropriate surfacing after they were denied the 2017 contract, that adequate spacing was available, and that the chain link fence "was built according to specifications from the city."  R.1, PID 7 (¶ 23).  And although the City also stated that it denied Plaintiffs the contract in part because Plaintiffs would need to subcontract heavy tow jobs, Plaintiffs claim that the City previously informed them that such an arrangement was acceptable.  R.1-5, PID 74; R.1, PID 7 (¶ 23).  We are required to take Plaintiffs' factual allegations as true for purposes of a motion to dismiss.  *See Golf Village N., LLC v. City of Powell*, 14 F.4th 611, 617 (6th Cir. 2021).  And taking these

-11-

No. 21-3657, *Speed Way Transp., LLC, et al. v. City of Gahanna, et al.*

allegations together with the other alleged incidents of differential treatment as true, Plaintiffs have alleged sufficient facts giving rise to the plausible inference that Defendants intentionally discriminated against Plaintiffs. *See Davis v. Prison Health Servs.*, 679 F.3d 433, 439 (6th Cir. 2012) ("The combined effect of these alleged facts, taken as true at this stage of the litigation, lead us to conclude that Davis has stated a plausible claim that he was improperly removed from the public-works program based upon the defendants' anti-gay animus."); *El-Hallani*, 623 F. App'x at 731 (holding that allegations of differential treatment, "[t]aken together," allowed a plausible inference of race-based discrimination).

For these reasons, we reverse the dismissal of Plaintiffs' equal protection claim.

## B.

Next, Plaintiffs claim that they alleged facts sufficient to establish that Defendants retaliated against them because of Shehata's religion. Appellant Br. at 19. The Complaint specifically alleges that "the treatment that Plaintiffs received was carried out by Defendants in retaliation for the exercise of their civil rights secured by the Free Exercise Clause of the First Amendment to the United States Constitution." R.1, PID 9 (¶ 35).[1] To establish a First Amendment retaliation claim, a plaintiff must establish that he engaged in protected conduct, that the defendant took an adverse action that would chill "a person of ordinary firmness" from continuing in that conduct, and that the defendant's adverse action was motivated in part by the plaintiff's exercise of the protected conduct. *Holzemer v. City of Memphis*, 621 F.3d 512, 520 (6th Cir. 2010). But here, the Plaintiffs have failed to allege that they engaged in "conduct"—a specific

---

[1] The complaint also makes a freestanding claim that the Defendants' actions denied the Plaintiffs their Free Exercise Clause rights, R.1, PID 8 (¶ 34), which the Plaintiffs appear to abandon on appeal in favor of a new argument that Defendants violated Plaintiffs' Free Association rights. Appellant Br. at 20. Because no Free Association Clause claim appears in the complaint, Plaintiffs' Free Association argument is wholly unsupported.

No. 21-3657, *Speed Way Transp., LLC, et al. v. City of Gahanna, et al.*

exercise of their religion—that the Free Exercise Clause protects.  Lacking an allegation of "protected conduct," the Plaintiffs cannot state a First Amendment retaliation claim based on the exercise of rights protected by the Free Exercise clause.  *Id.* at 525.  The district court did not err in dismissing this count.

## C.

Plaintiffs also contend that Defendants denied the towing contract to retaliate against them for their 2018 lawsuit against the City, in violation of Plaintiffs' First Amendment-protected right to petition the government.  They argue that this retaliation claim is adequate because they identified two adverse actions that were motivated by the 2018 lawsuit: (1) they were denied the 2020 contract, and (2) they were restricted to communicating with the City Attorney during the 2020 bidding process.  Appellant Br. at 21–22.

As to the first point:  *Iqbal* and *Twombly* give us our marching orders.  First, only well-pleaded *facts* (as opposed to legal conclusions) are credited.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 679 (citing *Twombly*, 550 U.S. at 556).  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* (quoting Fed. R. Civ. Proc. 8 (a)(2)).

Plaintiffs' complaint fails to offer facts to support the retaliatory-motive element of this First Amendment retaliation claim.  *See Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019).  The complaint here states simply that Plaintiffs "brought an action against" the City following the 2017 denial, R.1, PID 4 (¶ 13), that "[a]ll of the actions taken by Defendants . . . including the denial of

-13-

No. 21-3657, *Speed Way Transp., LLC, et al. v. City of Gahanna, et al.*

the vehicle towing contract on account of Plaintiffs' filing of a civil action against the Defendant City . . . had the effect of denying Plaintiffs of . . . the right to Petition the Government," R.1, PID 9 (¶ 37), and that "[t]he treatment that Plaintiffs received was carried out by Defendants in retaliation for the exercise of their civil rights secured by the . . . First Amendment." *Id.* at PID 9 (¶ 38). None of those support Plaintiffs' assertion that the City's decision to reject Plaintiffs' 2020 bid was in any part motivated by the 2018 suit. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (stating that "conclusory allegations of retaliatory motive unsupported by material facts will not be sufficient to state a . . . claim" (cleaned up)); *see Boxill*, 935 F.3d at 518 (holding that the plaintiff failed to state a plausible retaliation claim where she failed to allege non-conclusory facts that the defendants' conduct was motivated at least in part by her protected conduct).

As *Iqbal* makes clear, phrases such as "on account of" and "had the effect of" are conclusory legal assertions of causation, not facts. *See Iqbal*, 556 U.S. at 686 (holding that the court was not required to accept as true the complaint's legal conclusion that the petitioners discriminated against respondent "on account of [his] religion, race, and/or national origin and for no legitimate penological interest"); *see also Twombly*, 550 U.S. at 551 (finding that the complaint was deficient where it stated that the defendants "ha[d] entered into a contract, combination or conspiracy to prevent competitive entry . . . and ha[d] agreed not to compete with one another"). Because Plaintiffs have raised no more than a "mere possibility" of a First Amendment retaliation claim, they are not entitled to relief. *See Iqbal*, 556 U.S. at 679.

In short, the complaint fails to allege facts to support a retaliation claim based on protected petitioning activity.

-14-

No. 21-3657, *Speed Way Transp., LLC, et al. v. City of Gahanna, et al.*

### D.

Plaintiffs also posit that their § 1981 claim is viable via § 1983 and that the district court erred in dismissing it. They are incorrect. "[N]o independent cause of action against municipalities is created by § 1981(c)." *Arendale v. City of Memphis*, 519 F.3d 587, 599 (6th Cir. 2008). Section 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981" for suits against state actors in their official and individual capacities. *Grinter v. Knight*, 532 F.3d 567, 576–77 (6th Cir. 2008) (official capacity suits); *McCormick v. Miami Univ.*, 693 F.3d 654, 660 (6th Cir. 2012) (individual capacity suits). The district court did not err in dismissing this claim.

### E.

Finally, Plaintiffs contend that their substantive due process claim was properly pled.[2] To establish a substantive due process claim, a plaintiff must allege that a state actor's conduct was "arbitrary, or conscience shocking, in a constitutional sense." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (quoting *Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 128 (1992)). There is no possible way that any of the alleged conduct meets this standard. *Cf. Delk Const. Co., Inc. v. Munford*, 2 F. App'x 646, 648 (8th Cir. 2001) (per curiam) (holding that decision to award contract to lowest bidder despite his failure to have an approved certificate, which was a formality, did "not even come close to transgressing the conscience-shocking substantive due process standard"). The City had full discretion to award the towing contracts, and nothing in the complaint suggests that it did so in an arbitrary manner. *See Prime Contractors, Inc. v. Girard*, 655 N.E.2d 411, 416 (Ohio Ct. App. 1995) (noting that cities have "considerable latitude" in determining who is the "lowest and . . . best" bidder under Ohio Rev. Code § 735.05). Contrary

---

[2] Plaintiffs do not pursue their procedural due process or tortious interference claims on appeal.

No. 21-3657, *Speed Way Transp., LLC, et al. v. City of Gahanna, et al.*

to Plaintiffs' assertion, paragraphs 47 and 48 state merely legal conclusions and offer no facts to demonstrate that Defendants' actions shocked the conscience.

### III.

We therefore affirm in part and reverse in part.

No. 21-3657, *Speed Way Transp., LLC, et al. v. City of Gahanna, et al.*

**SUHRHEINRICH, Circuit Judge, concurring in part, dissenting in part.**

I agree that Plaintiffs' right to contract claim, substantive due process claims, right to petition claim, and First Amendment retaliation claim were properly dismissed. However, I think that Plaintiffs' equal protection claim was also properly dismissed, so I would affirm on that basis as well. For this reason, I respectfully dissent in part.

"To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Andrews v. City of Mentor*, 11 F.4th 462, 473 (6th Cir. 2021) (quoting *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011)). "When evaluating whether parties are similarly situated, courts should not demand exact correlation, but should instead seek relevant similarity." *Andrews*, 11 F.4th at 474 (cleaned up).

Count Four of the Complaint states Plaintiffs were discriminated against and denied the 2020 towing contract "on account of their national origin [Egyptian] and religion [Islam], even though they submitted the lowest and best bid" and were "similarly situated in all relevant respects to" the successful bidders. R.1, PID 10 (¶¶ 40–42). Plaintiffs claim that the following facts from the Complaint establish that they were treated differently than similarly situated individuals on account of their religion and national origin. First, despite making sure that the commercial property complied with Defendants' instructions, Plaintiffs were denied the 2017 contract, and City employees were instructed to call the police if Shehata tried to enter the City Building. *Id.* at PID 4 (¶ 14). Second, Defendants never notified Plaintiffs about the 2020 bidding process despite promising to do so and refused to respond to Plaintiffs' emails. *Id.* at PID 5 (¶ 16). Third, the solicitation for bids was hidden in an obscure location on the City website. *Id.* at PID 5 (¶ 17).

-17-

No. 21-3657, *Speed Way Transp., LLC, et al. v. City of Gahanna, et al.*

Fourth, the City officials resisted Plaintiffs' efforts to pay the deposit for their bid and directed them to contact the City Attorney. *Id.* at PID 5–6 (¶ 19). Fifth, Plaintiffs' bids were lower than the two selected bids. *Id.* at PID 6 (¶¶ 20–21). Sixth, Defendants' proffered reasons for rejecting the 2020 bid were not true because Plaintiffs fixed the parking lot surface, had adequate spacing, and built the chain link fence according to Defendants' specifications. *Id.* at PID 7 (¶¶ 22–23). Furthermore, Defendants' inspection was deficient because Plaintiffs' property is not fully visible from the right-of-way. *Id.* And City officials told them that subcontracting large jobs was permissible. *Id.* Seventh, Plaintiffs received water bills for non-existent water service as well as notice of a lien on the property for storm water service that did not turn up on during a title search long before Plaintiffs owned the property. *Id.* at PID 7 (¶¶ 26–27).

The first six of these acts purport to establish discrimination during the bidding process. But other than conclusory statements that these acts constituted a "difference in treatment" "on account of" Shehata's national origin and religion, I fail to see any facts to establish that Shehata's religion or national origin played any part in the City's treatment of them. In fact, the Complaint does not even allege that Defendants were aware of Shehata's religion or national origin. Plaintiffs' conclusory allegation that Winn's email reflects the "discriminatory animus" of City officials does not move the needle. As alleged in the Complaint, the email itself states simply that Shehata had just received a rejection letter that they might find upsetting. Nothing in this email even hints at Shehata's religion, race, or national origin, or that those factors affected the City's actions—in the 2017 bidding process let alone the 2020 bidding process.

None of the allegations explain how other similarly situated bidders were treated differently. The allegation that Plaintiffs were required to communicate through the City's attorney and that "other bidders were not treated in this fashion" does not supply a discriminatory

-18-

No. 21-3657, *Speed Way Transp., LLC, et al. v. City of Gahanna, et al.*

inference because Plaintiffs did not identify other bidders in active litigation with the City (the 2018 litigation related to the denial of the 2017 bid) who were treated better.  And, most important, the Complaint does not demonstrate that Plaintiffs were similar in all relevant aspects to the two successful bidders of the 2020 contract.  As the district court held, "[t]hough it is true that Plaintiffs' bid quoted lower fees for several services, a comparison also reveals several differences that favor the comparators—including processing fees, storage capacity, fleet size, and ability to handle heavy duty tows.  It is relevant that the City's cited reasons for not awarding Plaintiffs the 2020 Towing Contract encompasses several of these differences."  Unlike Broad & James and Cal Towing, Speed Way would need to subcontract heavy-duty tows.  Speed Way could accommodate only a fraction of the vehicles Broad & James could store—300 versus 1500—and had only five vehicles in its fleet compared to Broad & James's thirty vehicles.  (No information is available as to Cal Towing.)  Speed Way's processing fees were higher than one of the two comparators: Speed Way charged $60, Broad & James charged $0, and Cal Towing charged $75.  R.1-2, PID 24; R.1-3, PID 51, R.1-4, PID 68.  Unlike the majority, I perceive these differences in costs and capacity as significant such that they render Speed Way *dissimilar* to the two successful bidders in *relevant* respects.

None of the remaining allegations provide a comparator who received better treatment that could give rise to an inference of differential treatment.  At most, the complaint "permit[s us] to infer . . . the . . . possibility of misconduct."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2007).  But this is insufficient to state a plausible claim for intentional discrimination.  *See Nali v. Ekman*, 355 F. App'x 909, 913 (6th Cir. 2000) (plaintiff's allegations of differential treatment did not establish discrimination where he offered no evidence to show that others that were not disciplined were similarly situated and of a difference race).  Instead, all these allegations suffer from the same fatal

-19-

No. 21-3657, *Speed Way Transp., LLC, et al. v. City of Gahanna, et al.*

flaw flagged by the district court: they do not show that Defendants took any of these actions *because of* Shehata's national origin or religion. *See Weberg v. Franks*, 229 F.3d 514, 522 (6th Cir. 2000). Intent to discriminate because of a plaintiff's protected status is an indispensable element of an Equal Protection claim, *see Washington v. Davis,* 426 U.S. 229, 239 (1976), and "conclusory allegations of discriminatory intent without additional supporting details do[] not sufficiently show that the pleader is entitled to relief," *Nali*, 355 F. App'x at 913 (citing *Iqbal*, 556 U.S. at 679–82); *Iqbal*, 556 U.S. at 683 (holding that the plaintiff's complaint failed to contain facts showing that the defendant officials acted purposefully because of the plaintiff's race, religion, or national origin). For these reasons, I would affirm the district court on this basis as well.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 21-3657

SPEED WAY TRANSPORTATION, LLC; AHMED
SHEHATA,

     Plaintiffs - Appellants,

    v.

CITY OF GAHANNA, OHIO; KEITH WINN, in his
individual and official capacity as Public Safety Director;
GAHANNA DIVISION OF POLICE; JEFF SPENCE, in his
individual and official capacity as Chief of Police,

     Defendants - Appellees.

> **FILED**
> Mar 01, 2023
> DEBORAH S. HUNT, Clerk

Before:  SUHRHEINRICH, WHITE, and STRANCH, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Southern District of Ohio at Columbus.

    THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

    IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED IN PART and REVERSED IN PART.

**ENTERED BY ORDER OF THE COURT**

_____
Deborah S. Hunt, Clerk