# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**SPEED WAY TRANSPORTATION, LLC**, *et al.*,

                                    :

                 **Plaintiffs,**

             **v.**

**CITY OF GAHANNA**, *et al.*,        :

                 **Defendants.**

**Case No. 2:20-cv-5047**
**Judge Sarah D. Morrison**
**Magistrate Judge Kimberly A. Jolson**

## OPINION AND ORDER

Ahmed Shehata, an Egyptian-born Muslim, owns a vehicle towing provider called Speed Way Transportation, LLC (together with Mr. Shehata, "Speed Way"). In 2020, Speed Way bid for a towing contract with its hometown of Gahanna, Ohio. The bid was unsuccessful. Believing it was denied for discriminatory reasons, Speed Way filed suit. After the Sixth Circuit Court of Appeals revived Speed Way's equal protection claim against the City of Gahanna, Chief of Police Jeff Spence, and Public Safety Director Keith Winn (collectively, "Gahanna"), Gahanna moved for summary judgment. Because Speed Way offers insufficient evidence that Gahanna intentionally discriminated against it, the Motion is **GRANTED**.

## I.   BACKGROUND

Ahmed Shehata was born in Port Said, Egypt. (Shehata Dep., ECF No. 41, 20:1–4.) He moved to the United States in 2012 and became a citizen in 2018. (*Id.*,

21:4–5, 29:13.) English is Mr. Shehata's second language and, by all accounts, he speaks with an accent. (*Id.*, 24:18.)

Two years after moving to Ohio, Mr. Shehata founded Speed Way by purchasing his first tow truck. (*Id.*, 37:115.) The business steadily grew from there. By 2016, Speed Way needed more space. It rented a large lot at 788 Taylor Station Road in Gahanna, Ohio. (*Id.*, 47:1–2.) Communications and negotiations began almost immediately between Speed Way and Gahanna—and the record reflects that challenges appeared just as quickly. For example, because 788 Taylor Station was not connected to the city's water and sewer systems, Speed Way was required to bring in a temporary trailer, portable bathroom and hand-washing station, and potable water tank. (*See id.*, 56:10–57:24.) Although the Gahanna Planning Commission expressed hesitation about a temporary structure being used as an office, it allowed Speed Way to operate out of the trailer for a period of time—but also required Speed Way to install a handicap ramp and screen certain elements of the lot from public view. (*See id.*, 65:11–15, 66:3–7, 67:2.)

A.  **Before 2017, Gahanna maintained a list of preferred towing service providers.**

While the back-and-forth about 788 Taylor Station was ongoing, Speed Way began to inquire about business opportunities with the city—specifically, securing a place on the city's list of preferred towing providers. (*See id.*, 108:18–22.) At that time, the Gahanna Police Department "had a list [of towing providers] in the radio room, and they'd just rotate who they would call." (Thomas Dep., ECF No. 46, 17:11–13.) The list included Cal's Towing and Broad & James Towing, along with a

2

third company. (Spence Dep., ECF No. 44, 14:21.) When Gahanna's then-Director of Public Safety, Mark Thomas, learned that Speed Way wanted to be added to the list, he asked about the city's process for selecting towing providers. (*Id.*, 17:2–7.) Mr. Thomas learned that there was no formal process in place, and he thought that ought to change. (*Id.*)

**B.**  **Gahanna issued its first request for proposals from towing providers in 2017. Speed Way's bid was rejected.**

Shortly thereafter, the city issued a request for proposals (the "2017 RFP"). The 2017 RFP sought two towing providers to enter into a three-year contract (the "2017 Contract") with the city. Speed Way submitted a bid. After reviewing all bids and conducting on-site visits, Mr. Thomas awarded the 2017 Contract to Cal's Towing and Broad & James Towing.

On August 11, 2017, Mr. Thomas sent the following letter to Speed Way:

Mr. Shehata:

Thank you for responding to the City of Gahanna's towing and impound services Request for Proposal (RFP). In order to ensure an equitable process vendors must be able to meet the requirements as specified in the RFP at the time of submission. Through the process and subsequent on-site inspection of your facilities conducted on August 10, 2017, we have determined that Speed Way Towing fails to meet the specified requirements as follows:

- Item G: The area on which towed vehicles were parked and stored is not a hard service with proper drainage. During the on-site inspection vehicles were parked on a grass surface (a violation of §1163.05(a) GCO). In addition, ruts, mud and standing water were present indicating a lack of proper drainage

- Item J: The current storage area is not enclosed by a chain link fence as evidenced by the wood fence/gate located at the west entrance of the facility. As the inspection revealed issues of non-

compliance with the RFP, a determination as to the vehicle capacity of the facility (minimum of 100 vehicles) was not made.

- Item K: The storage area is not in compliance with the applicable ordinances of the City of Gahanna in which the facility is located.

As a result of the failure to meet the specifications in the RFP and the subsequent violations of local code that were observed during the on-site inspection, Speed Way Towing will no longer be considered.

The RFP process will again reopen in the year 2020. As the process has been concluded no further correspondence will be forthcoming.

Respectfully,

Mark A. Thomas
Director of Public Safety

(ECF No. 43, PAGEID # 648–49.)

## C. After Speed Way's bid was rejected, the Director of Public Services advised staff to call the police if Mr. Shehata came to city hall.

Three days later, on August 14, 2017, Mr. Thomas emailed a copy of his

August 11 letter to certain city employees—including then-Director of Public

Services, Dottie Franey. (*Id.*, PAGEID # 647.) Ms. Franey forwarded the letter to

other city employees, with the following:

NOTICE –

Please be on alert that Ahmed Farouk Shehata with Speedway Towing might find the attachment that was emailed to him by Safety Director, Mark Thomas, extremely upsetting. Take precaution if he enters the building by calling the police department immediately. If you need additional information regarding who this individual is, contact your supervisor.

DOTTIE A. FRANEY
Director of Public Service
Department of Public Service and Engineering

(Franey[1] Email, ECF No. 43, ECF No. 645.)

Ms. Franey testified that she sent the Franey Email because she observed Mr. Shehata interacting with front desk staff at city hall in a loud and "accusatory" manner. (Franey Dep., ECF No. 43, 20:24–21:7, 22:2; *see also* Spence Dep., 26:7–11.) Chief Spence (who was Deputy Chief at the time (*see* Spence Dep., 7:8–11)) testified that, in similar circumstances, the Gahanna police try to "make arrangements" aimed at "avoid[ing] confrontations" between visitors and city hall staff. (*Id.*, 27:5–13.) He justified this approach, explaining:

> The front desk staff are not there to take people's abuse. And they are not trained. They are simply there to direct people, to get them city services, and, you know, to make sure that – obviously, act as a first point of contact for people who do come to city hall. . . . . Again, these are front desk staff. It doesn't take much for them to feel uncomfortable and feel as if their safety could be of concern to them, even if somebody is just loud and aggressive. Police officers are trained to deal with that. These folks are not. . . . [W]e have an obligation to make sure that they feel they are in a safe workspace. And if somebody comes in and raises their voice, it's not up to us to parse whether they feel unsafe. So, generally, we alert . . . the other front desk staff that, hey, this person may come in and be agitated. If you feel uncomfortable, call the police. . . . If somebody has previously come and has already shown a propensity to be difficult, or, you know, to be threatening or otherwise cause a safety concern, it's best to let us handle it as opposed to, again, those front desk staff that aren't trained.

(*Id.*, 48:24–50:15.)

---

[1] The Sixth Circuit attributed the Franey Email to Defendant Keith Winn. *Speed Way Transp., LLC v. City of Gahanna, Ohio*, No. 21-3657, 2023 WL 2293099, at *1 (6th Cir. Mar. 1, 2023). This appears to have been in error. The Complaint alleged that the Director of Public *Service* (**not** the Director of Public *Safety*) sent the August 14, 2017 email. In any event, the Director of Public Safety in 2017 was Mark Thomas; Keith Winn was not appointed until nearly three years later.

### D. Speed Way filed suit in state court.

After its bid for the 2017 Contract was rejected, Speed Way filed suit in Franklin County Court of Common Pleas. *See Speed Way Transp. LLC v. City of Gahanna*, 18CV010373 (Franklin Cnty. Ct. Com. Pl., filed Dec. 13, 2018). That litigation remains active today. *See Speed Way Transp. LLC v. City of Gahanna*, 24AP000141 (Ohio Ct. App., filed Feb. 23, 2024).

### E. Gahanna issued a second request for proposals in 2020. Speed Way's bid was again rejected.

As the 2017 Contract term came to a close, Speed Way asked to be notified when a new request for proposals was issued. (Shehata Dep., 141:11–23.) In mid-June 2020, Mr. Shehata found the RFP (the "2020 RFP") on the city's website; no one from the city had notified him that it was available. (*Id*.) The day before the close of the bid period, Mr. Shehata's son went to city hall to deliver Speed Way's proposal and application fee in-person. (*Id*., 142:9–22.) At that time, city hall was closed to visitors due to the COVID-19 pandemic, but phone numbers were posted on the door. Mr. Shehata's son called the relevant number and, after some difficulty, was told that Speed Way must communicate with the city through the City Attorney's office due to the pending litigation. (*Id*.) Ultimately, Speed Way timely submitted its proposal—including RFP responses, a Minority Business Enterprise ("MBE") Certification from the City of Columbus, certificates of liability insurance and Workers' Compensation coverage, and a copy of a cashier's check—by email. (*See* ECF No. 44, PAGEID # 773.)

Now-Chief Spence[2] evaluated the 2020 RFP submissions and awarded the 2020 Contract to Cal's Towing and Broad & James Towing. (Spence Dep., 53:14.) He rejected Speed Way's proposal after concluding, based on his observations of the property from the roadway, that the company was "still not in compliance with the RFP based on the condition of the property." (*Id*., 55:13–15, 56:7–13, 64:3–7; *see also id*., 41:4–8 ("In the RFP, it states that they need to be in compliance with zoning and other regulations. They were not. To this day, I don't believe they are in compliance.").) After Speed Way (through counsel) asked for specific reasons why its proposal was rejected, an attorney for the city sent an email stating:

> . . . Speed Way's bid was not ignored. It was considered and evaluated along with the other towing contract bids, but was ultimately rejected for numerous reasons. You made a comment . . . that the City did not . . . conduct a site inspection. First, there is not a requirement for a formal site inspection. Second, the site was viewed and analyzed by the City from the Right-of-Way and it was determined that there was inadequate improved surfacing, inadequate spacing, and inadequate chain-link fencing at the site. Further, it is the City's understanding that Speed Way would have to subcontract out larger tow jobs to third-parties, whereas the other towing contract bidders are able to handle those larger tow jobs themselves. Ultimately, the City has authority to award the towing contracts at its discretion, and just because Speed Way was not selected does not mean its bid was somehow ignored or treated unfairly. . . .

(ECF No. 44, PAGEID # 825.)

---

[2] Although the Director of Public Safety evaluated proposals in the 2017 RFP, Chief Spend was the sole decisionmaker in awarding the 2020 Contract. (Thomas Dep., 48:22–23; Winn Dep., 20:24–24:1, 23:11–13, 24:20–21.)

**F.    Relations between Gahanna and Speed Way have not improved since Speed Way's second bid was rejected.**

Since the 2020 Contract was awarded, three significant events have transpired:

<u>First</u>, the Gahanna City Attorney decided to pursue unpaid stormwater management fees on 788 Taylor Station. (Wybensinger Aff., ECF No. 55-1.) Between 2007 and 2018, the Department of Public Services failed to bill the property owner for those services. (*Id*.) When the error was discovered, the unpaid balance approached $2,800. (*Id*.) Although the city began sending correct bills in 2018, it did not pursue the full balance until July 2020. (*Id*.)

<u>Second</u>, the Gahanna Planning Commission denied Speed Way's zoning application. (Antonetz Aff., ECF No. 50-3.) The engineer Speed Way hired to assist with the application concluded that "the process was dilatory[.]" (*Id*.) Indeed, he did "not understand why the process took so long, or why we could not seem to get any precise answers on use or process." (*Id*.) He believes the Planning Commission denied the application "because they didn't like the applicant or the use." (*Id*.)

<u>Finally</u>, Chief Spence decided to abandon the RFP process for selecting towing service providers after the 2020 Contract expired. (Spence Dep., 68:1–24.)

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving

8

party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

## III.   ANALYSIS

Speed Way alleges that Gahanna intentionally discriminated against it on the basis of national origin and religion, in violation of the Equal Protection Clause of the Fourteenth Amendment. (Am. Compl.) "The Equal Protection Clause prohibits discrimination by government which burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Rondigo, L.L.C. v. Township of*

9

*Richmond*, 641 F.3d 673, 681 (6th Cir. 2011). Speed Way asserts only a suspect-class claim. To establish its claim, Speed Way must show that Gahanna "'made an [adverse decision] with a discriminatory intent and purpose'" and that such "decision would not have occurred but for [the] protected status." *Foster v. Michigan* (hereinafter "*Foster II*"), 573 F. App'x 377, 391 (6th Cir. 2014) (citing *Boger v. Wayne Cnty.*, 950 F.2d 315, 324–25 (6th Cir. 1991)). Doing so requires Speed Way to "do more than just introduce evidence of discriminatory intent and suggest that such intent could have played a role in" the adverse decision. *Id*. (citations, quotations, and alterations omitted).

### A. Speed Way does not offer direct evidence of discrimination.

"A plaintiff may prove a claim of intentional discrimination using either direct or circumstantial evidence." *Id*. at 392 (citation omitted). Direct evidence is evidence that "does not require a factfinder to draw any inferences"—instead, the evidence itself "requires the conclusion that unlawful discrimination was" at least a motivating factor. *Id*. at 393 (quoting *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003) and *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)).

Speed Way argues that the Franey Email is direct evidence of discrimination. (Resp., PAGEID # 1055.) The argument fails for two reasons. First, the Franey Email contains no reference to Mr. Shehata's national origin or religion—so, it would require an *inference* to conclude that Ms. Franey harbored animus because of those characteristics. Second, Ms. Franey played no part in awarding the 2020 Contract and her statements are thus irrelevant. *Rowan v. Lockheed Martin Energy*

10

*Sys., Inc.*, 360 F.3d 544, 550 (6th Cir. 2004) (concluding that statement by non-decision maker could not constitute direct evidence of discrimination); *see also Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998) ("Statements by non-decision makers . . . cannot suffice to satisfy the plaintiff's burden of demonstrating animus.") (internal quotations, citation, and alterations omitted).

### B.   Speed Way fails to present significant probative evidence upon which a reasonable jury could find in its favor.

Given the lack of direct evidence of discrimination, Gahanna urges the Court to analyze Speed Way's claim under the *McDonnell Douglas* burden-shifting framework. (Mot., PAGEID # 560 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).) Speed Way adopts the framework in its briefing, as well. (*See* Resp., PAGEID # 1055.) The Court is very familiar with *McDonnell Douglas*, which is ubiquitous in actions alleging discrimination in employment. But this case does not arise out of an employment relationship; it arises out of competitive bidding for a public contract. Though the parties do not cite a single case in which *McDonnell Douglas* is used to determine whether a proposal for a public contract was rejected for unlawful discriminatory reasons, the Court's own research shows that at least one such case exists. *See Foster v. Judnic* (hereinafter "*Foster I*"), 963 F. Supp. 2d 735 (E.D. Mich. 2013) (analyzing government contractor's § 1983 equal protection claim using *McDonnell Douglas*), *aff'd, Foster II*, 573 F. App'x at 377 (affirming the district court's decision without express reference to *McDonnell Douglas*); *see also Thompson v. Ohio State Univ.*, 639 F. App'x 333, 340–41 (6th Cir. 2016) (accepting

the parties' use of *McDonnell Douglas* to review student's § 1983 equal protection claim).

Under this approach, Speed Way must first establish a *prima facie* case of discrimination by a preponderance of the evidence. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (modifying *McDonnell Douglas*)). Doing so creates a rebuttable presumption of unlawful discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07 (1993). If Speed Way establishes a *prima facie* case, the burden shifts to Gahanna to articulate a legitimate, non-discriminatory reason for the adverse action. *Burdine*, 450 U.S. at 252–53. If it does, the burden of production shifts again and Speed Way "will survive summary judgment only by raising a genuine issue of material fact as to whether the proffered reason is . . . pretext for" unlawful discrimination. *Walcott v. City of Cleveland*, 123 F. App'x 171, 176 (6th Cir. 2005). Speed Way bears the burden of persuasion at all times. *See Burdine*, 450 U.S. at 253.

### 1. *Prima Facie* Case

The first question is whether Speed Way can make a *prima facie* showing of discrimination.

> Traditionally, this *prima facie* case consists of four prongs: (1) that the plaintiff "is a member of a protected class"; (2) that she was "qualified for [the] job"; (3) that she "suffered an adverse employment decision"; and (4) that she was "treated differently than similarly situated non-protected" individuals.

*Thompson*, 639 F. App'x at 340 (quoting *White*, 533 F.3d at 391). Adapting the four-pronged test for use in the present, non-employment context, Gahanna concedes

prongs one (that Mr. Shehata is a member of a protected class) and three (that Speed Way was not selected for the 2020 Contract). Gahanna argues instead that (i) Speed Way was not qualified for the 2020 Contract because it did not meet the RFP specifications and (ii) Speed Way was not similarly situated to Broad & James Towing or Cal's Towing.[3]

_Prong Two: Qualifications_. Gahanna first argues that Speed Way was not qualified because it did not satisfy the 2020 RFP requirements. (Mot., PAGEID # 561.) It offers the same reason as its legitimate, non-discriminatory reason for rejecting Speed Way's bid. (_Id_., PAGEID # 564.) In doing so, Gahanna conflates the first and second steps of the analysis it urges the Court to adopt. _See Cline v. Cath. Diocese of Toledo_, 206 F.3d 651, 660 (6th Cir. 2000) (concluding the district court erred by "using [defendant's] 'nondiscriminatory reason' as a predicate for finding [plaintiff] to have failed to make a _prima facie_ case"). The Court thus defers the

---

[3] This Court faulted Speed Way for failing to allege its comparators' national origins and religions. (_See_ ECF No. 19, PAGEID # 158–59.) But a majority of the Sixth Circuit panel reviewing that decision interpreted the allegations as sufficient:

> Plaintiffs allege[d] that no other business—let alone any other towing business—in the City of Gahanna, including the comparator firms Broad & James and Cal's Towing, is owned, and operated by individuals of Egyptian national origin and Muslim faith.

_Speed Way Transp._, 2023 WL 2293099, at *4. According to the materials attached to the Complaint, however, both Broad & James Towing and Cal's Towing are located in the City of Columbus—_not_ the City of Gahanna. (ECF No. 1-3, PAGEID # 50; ECF No. 1-4, PAGEID # 69.) Though there is no evidence before the Court about the owners' origins or religions, Gahanna does not dispute that Broad & James Towing and Cal's Towing are outside the relevant protected classes.

13

question of Speed Way's qualifications to steps two and three. *Id.* at 661 (citing *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711 (1983)).

<u>*Prong Four: Similarly Situated*</u>. To establish the fourth prong of its *prima facie* case, Speed Way must "demonstrate that [it] is similarly situated to the non-protected [comparators] in all *relevant* respects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998) (emphasis in original). Gahanna argues that Speed Way is not similarly situated to the successful bidders because Speed Way "had multiple property maintenance issues with the City over a period of years" while the comparators had none. (Mot., PAGEID # 562.) Deposition testimony sheds some additional light. Chief Spence stated, and then reiterated, that he had concerns about continuing "code violations" on Speed Way's property and about its failure to comply with "zoning requirements." (*See* Spence Dep., 55:19–20, 64:22–23.) Director Winn confirmed that, during the bid period, Chief Spence shared his "concerns regarding . . . the condition of [Speed Way's] lot and the building." (Winn Dep., 25:7–13.)

Speed Way does not dispute that these concerns were relevant. Instead, it argues that "Safety Director Mark Thomas testified that any code or zoning compliance issues did not play a factor in the decision to deny the contract." (Resp., PAGEID # 1056.) But Mr. Thomas played no role in reviewing proposals for, or awarding, the 2020 Contract. (Thomas Dep., 48:18–23.) Rather, Chief Spence alone evaluated the 2020 FRP submissions and awarded the 2020 Contract; Speed Way offers no evidence that Chief Spence's concerns about code or zoning compliance

14

issues were suspect or otherwise invalid. Speed Way thus fails to make a *prima facie* showing by a preponderance of the evidence.

### 2.    Legitimate, Non-Discriminatory Reason

Even if Speed Way were able to make a *prima facie* showing of discrimination, Gahanna articulates legitimate, non-discriminatory reasons for rejecting its bid for the 2020 Contract. Gahanna communicated those reasons in a July 21, 2020 email between counsel for the parties:

> [Gahanna] determined that [Speed Way has] inadequate improved surfacing, inadequate spacing, and inadequate chain-link fencing at the site. Further, it is the City's understanding that Speed Way would have to subcontract out larger tow jobs to third-parties, whereas the other towing contract bidders are able to handle those larger tow jobs themselves.

(ECF No. 1-5.)

### 3.    Pretext

At step three of the *McDonnell Douglas* framework, Speed Way can argue that Gahanna's proffered reasons for rejecting its bid for the 2020 Contract: (i) had no basis in fact; (ii) did not actually motivate the rejection; or (iii) were insufficient to motivate the rejection. *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) (quoting *Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 839 (6th Cir. 2012)). Though this three-category approach is a "convenient way of marshaling evidence," the Sixth Circuit cautions courts to "avoid formalism in its application, lest one lose the forest for the trees." *Chen v. Dow Chemical Co.,* 580 F.3d 394, 400 n.4 (6th Cir. 2009). "[A]t bottom the question is always whether [the defendant] made up its stated reason to conceal intentional discrimination." *Id*.; *accord Cline*,

206 F.3d at 666 (explaining that pretext takes "the factual inquiry . . . to a new level of specificity," with the plaintiff "shouldering the burden" to demonstrate the ultimate question) (quoting *Burdine*, 450 U.S. at 255–56). Speed Way thus must produce evidence of more than just "a dispute over the facts upon which" Gahanna made its decision—instead, the evidence must show that the decision was made for discriminatory reasons. *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001); *cf. St. Mary's Honor Ctr*, 509 U.S. at 515 (explaining that a defendant's "reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason").

Speed Way argues that Gahanna's proffered reasons had no basis in fact (by disputing Gahanna's assessment of its property) and did not actually motivate the decision (by describing a history of difficult interactions with the city).

### a)    Gahanna's Stated Reasons

Speed Way first launches a direct attack on Gahanna's proffered reasons for its decision. But because Speed Way does not offer significant probative evidence to support its arguments, the attack fails.

*Property Conditions*. Speed Way first disagrees with Chief Spence's assessment that the property had inadequate surfacing, spacing, and chain link fencing. (Resp., PAGEID # 1056.) Chief Spence testified that he observed these conditions himself, as he was familiar with Speed Way's property from driving past. (Spence Dep., 42: 11–14; 56:9–13.) Though Mr. Shehata testified that his property was not fully visible from the road (Shehata Dep., 152:22–23), Speed Way does not produce any evidence actually refuting Chief Spence's conclusions—it fails to offer

16

any evidence addressing the specific conditions of its property (including surfacing, spacing, and fencing) as it was in 2020.[4] It is not enough to say that Chief Spence is wrong; Speed Way must present testimony or physical evidence to create a genuine issue of material fact as to the conditions of Speed Way's property in 2020.

To illustrate the point further: One reason Gahanna articulates for rejecting Speed Way's 2020 proposal is "inadequate chain link fencing." Speed Way fails to show that Gahanna is incorrect—its only rebuttal is Mr. Shehata's testimony that the property had a chain link fence. (Shehata Dep., 153: 3–5 ("I already have a chain link fence at that time.").) Of course, that says nothing about the *adequacy* of that fence.

*Heavy Duty Subcontract*. Speed Way next argues that Gahanna's reference to the heavy-duty subcontract is pretext for unlawful discrimination because Mr. Thomas wrote in an email[5] that he would not hold that against a bidder for the 2017 Contract. But Mr. Thomas was not a decisionmaker as to the 2020 RFP and there is no evidence that Chief Spence made any similar representation with respect to the 2020 Contract.

---

[4] As to the condition of the property in 2017, Chief Spence testified that "the size of the lot was in question[,]" "[t]he surface in which he was parking vehicles was not improved[,]" and "[t]he fencing in some places was falling down." (Spence Dep., 41:5–19.)

[5] This email was not produced for the Court's review.

*Distance*. Finally, Speed Way argues that Gahanna's invocation of the RFP specifications to deny its proposal for the 2020 Contract is suspect because Cal's Towing does not meet the RFP's distance requirement. The 2020 RFP states:

> The bidder shall have a business location within four [4] miles from the Headquarters of the Gahanna Division of Police, 460 Rocky Fork Blvd.

(ECF No. 1-1, PAGEID # 16.) Speed Way submitted an affidavit by Mr. Shehata stating that he "reviewed the distances from the Gahanna Police department for Cal's Towing and Broad & James Towing using a computer maps service[,]" which showed Cal's Towing to be a 5.8 mile drive[6] from the police department. (ECF No. 50-2, ¶¶ 4–5.) But nothing in the record suggests that Gahanna was required to use *driving* distance to determine compliance with this requirement. To the contrary, Chief Spence testified in deposition that he used *radial* distance. (Spence Dep., 55:3–5 ("The radius, the mileage radius to police headquarters was written into the RFP.").) Speed Way's argument thus fails.

### b)  The Parties' Course of Dealing

Speed Way lists a slew of negative interactions it has had with various departments and divisions of the City of Gahanna. It argues that those interactions

---

[6] Mr. Shehata's map was not produced, but Google Maps shows that Cal's Towing is a 5.8 mile drive from the Gahanna Police Headquarters, when Cal's Towing is the starting point. (*See* https://www.google.com/maps/dir/3245+E+5th +Ave,+Columbus,+OH+43219/460+Rocky+Fork+Boulevard,+Gahanna,+OH, visited June 6, 2024.) Cal's Towing and the Gahanna Police Headquarters are a 4.5 mile drive when the Cal's Towing is the destination. (*See* https://www.google.com/maps /dir/460+Rocky+Fork+Boulevard,+Gahanna,+OH/3245+E+5th+Ave,+Columbus, +OH+43219, visited June 6, 2024.) There can be no dispute about this fact, and thus judicial notice is properly taken.

18

undermine the credibility of Gahanna's proffered reasons for rejecting its proposal and underscore its claims of pretext.

The argument begins with the Public Safety Department's 2017 decision to implement a competitive bidding process for towing services, continues across Ms. Franey's August 14, 2017 email instructing staff to call the police if Mr. Shehata entered city hall, spans the Public Service Department's July 2020 assessment of unpaid stormwater management service charges for Speed Way's property, and ends with the Planning Commission's July 2023 recommended denial of a zoning application Speed Way submitted nearly two years after the 2020 Contract was awarded. But there is no evidence of any single decisionmaker, policy, or other throughline connecting these substantively distinct, temporally disparate events together—let alone connecting these items to Mr. Shehata's protected characteristics. Even though Mr. Shehata speaks with an accent and certified his business as an MBE, there is no evidence that Gahanna (or any Gahanna official or employee) ever knew Mr. Shehata's religion or national origin before this litigation began. (*See* Franey Dep., 12:6–10 (denying knowledge of Mr. Shehata's religion), 11:15–20 (denying knowledge of Mr. Shehata's national origin); Spence Dep., 22:16–17 (denying knowledge of Mr. Shehata's religion), 22:6–8 (denying knowledge of Mr. Shehata's national origin); Thomas Dep., 19:17–21 (denying knowledge of Mr. Shehata's religion); Winn Dep., 16:9–16 (denying knowledge of Mr. Shehata's national origin)).

Speed Way thus fails to proffer significant probative evidence upon which a reasonable jury could find in its favor on the ultimate question.

## IV.    CONCLUSION

For the reasons above, Gahanna's Motion for Summary Judgment is **GRANTED**. The Clerk is **DIRECTED** to terminate this case.


**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**